## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NATURELLA USA LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24-cv-1832 |
| | ) | |
| BENDTEC, INC. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Naturella USA Ltd. ("Naturella") brings this action against defendant BendTec, Inc. ("Bendtec") seeking a declaratory judgment regarding the parties' rights stemming from a 2011 contract for the sale of manufactured materials and a subsequent assignment of receivables related thereto. BendTec has filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Dckt. #15). Because Naturella has failed to make a *prima facie* showing that this Court has personal jurisdiction over BendTec, the motion to dismiss, (Dckt. #15), is granted in part. In the interests of justice, the Court further grants Naturella's request to transfer pursuant to 28 U.S.C. §1631 and the Clerk is directed to transfer this matter forthwith to the United States District Court for the District of Minnesota.

## I.    LEGAL STANDARD

A motion under Rule 12(b)(2) tests the Court's personal jurisdiction over a defendant. "The plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020), *quoting*

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). Where, as here, "the Court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction." *MG Design Assocs., Corp. v. CoStar Realty Info., Inc.*, 267 F.Supp.3d 1000, 1010 (N.D.Ill. 2017).

In determining whether plaintiff has made such a showing, the Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (cleaned up). However, if the "defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. The Court "will accept as true any facts in the defendants' affidavits that do not conflict with anything in the record," but will resolve any "factual conflict" in favor of the plaintiff. *Curry*, 949 F.3d 385 at 393.

## II.    BACKGROUND

The facts, as alleged in plaintiff's complaint, are as follows:

Plaintiff Naturella is an Illinois corporation with its principal place of business in Naperville, Illinois. (Dckt. #2 ¶1). Defendant BendTec is a Delaware corporation with its principal place of business in Duluth, Minnesota. (*Id.* ¶2). Non-party Technopromexport ("TPE") is a Russian engineering company that built energy facilities in Russia and other countries that included hydropower, thermal, geo-thermal, and diesel power plants, power lines, and electricity substations. (*Id.* ¶3).

On January 27, 2011, TPE contracted with BendTec to purchase industrial grade high pressure piping. (*Id.*). The terms of the contract – translated from Russian to English at Dckt.

#2-1 – required TPE to make an initial deposit of cash to BendTec.  (Dckt. #2 ¶4).  TPE made its initial cash deposit by wire through three equal installments of $8,362,500 (for a total of $25,087,500) on June 16, 2011, July 28, 2011, and June 6, 2012.  (*Id*.).  BendTec, however, never performed its obligations under the contract "due to the interruption of commercial relations between the United States and the Russian Federation as a result of the sanctions imposed by the United States against the Russian Federation after the Russian annexation of the Crimean Peninsula in 2014."  (*Id*. ¶5).  At some point thereafter, TPE went into receivership and its assets, including its receivables, were liquidated.  (*Id*. ¶6).

On April 28, 2022, the "funds deposited with BendTec constituting a receivable for TPE" were sold at auction from the Russian bankruptcy court to Neycho Sotev, a Bulgarian national. (*Id*. ¶7; Dckt. #2-3).  Sotev then assigned his ownership of the receivable to Naturella.  (Dckt. #2 ¶¶8-9; Dckt. #2-3).

In this action – as the purported title owner, by assignment, of the TPE receivable held with BendTec – Naturella seeks a declaratory judgment regarding its rights to collect under the initial manufacturing contract between TPE and BendTec (Count I) and under the subsequent purchase of the receivable (Count II).  (Dckt. #2 ¶¶10-15).

## III.    ANALYSIS

BendTec now asks the Court to dismiss this action pursuant to Rule 12(b)(2), arguing that plaintiff has failed to meet its burden to establish that this Court has personal jurisdiction over BendTec.  Plaintiff responds that BendTec's continuous contacts with Illinois – namely, its sale of goods for use in large Illinois projects – are sufficient to establish personal jurisdiction.[1]  For the reasons that follow, the Court disagrees.

---

[1] Without citing any authority, Naturella implies that BendTec waived its personal jurisdiction argument by waiting to raise the issue in its motion to dismiss, filed months after defendant was served.  Although

**A. Plaintiff has failed to make a *prima facie* showing that the Court may exercise personal jurisdiction over defendant BendTec.**

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction [over a party]." *Walden v. Fiore*, 571 U.S. 277, 283 (2014), *quoting Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014). Illinois employs a long-arm statute which applies the same standard as federal due process: a defendant must have sufficient contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017), *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Physical presence in the forum state is not required, but there must be sufficient minimum contacts such that the defendant "should reasonably anticipate being haled into court there." *Brook*, 873 F.3d at 552. Personal jurisdiction may be "general" or "specific," *Rogers v. City of Hobart, Ind.*, 996 F.3d 812, 818 (7th Cir. 2021), *quoting Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021). Naturella has fallen far short in establishing jurisdiction under either variety.

**1. The Court does not have general personal jurisdiction over BendTec.**

"General jurisdiction permits a defendant to be sued in a particular forum for any claim, regardless of whether the claim has any connection to the forum state." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020). However, general personal jurisdiction exists only where the defendant has "continuous and systematic" general business contacts with the forum. *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 722 (7th Cir. 2024) (citing *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011)). Those contacts must

---

"personal jurisdiction is waivable," *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005), there was no waiver by BendTec here. Not only did BendTec expressly raise its objection to personal jurisdiction in the joint initial status report filed by the parties on May 6, 2024, (Dckt. #8), it also sought and was granted extensions of time to answer or otherwise plead, and then raised the issue of personal jurisdiction in its timely filed motion to dismiss. *See* Fed.R.Civ.P. 12(b)(2).

be "so constant and pervasive as to render [defendant] essentially at home in the forum State." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697–98 (7th Cir. 2015), *quoting Daimler*, 571 U.S. at 122.  "This is a demanding standard that requires the defendant to have such extensive contacts with the state that it can be treated as present in the state for . . . all purposes." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010); *see also Kipp*, 783 F.3d at 698 (noting that general jurisdiction "should not lightly be found").  Generally speaking, corporate defendants such as BendTec "are found to be at home only in 'the state of the corporation's principal place of business and the state of its incorporation.'"  *MG Design*, 267 F.Supp.3d at 1013, *quoting Kipp*, 783 F.3d at 698.  It is only in "exceptional" cases where a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State."  *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (cleaned up).

Finally, "when analyzing whether a party is continuously and systematically 'doing business,' [in the forum state] . . . courts have looked at a continuous period of time, rather than a specific fixed time."  *Cent. States,* 530 F. Supp. 2d at 1016.  Furthermore, as the Seventh Circuit has confirmed, "the critical point of a court's focus must be when a defendant is made a party to a suit."  *Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994).

Here, Naturella purported to establish the Court's general personal jurisdiction over BendTec by alleging in its complaint as follows:

> [T]he Court has personal jurisdiction over BendTec because BendTec's contacts with the State of Illinois are significant and pervasive.  The State of Illinois is a large and important market for the sale of BendTec products.  BendTec has sales representatives, dealers, and distributors located in the State of Illinois that market, promote, and sell BendTec products. BendTec has conducted business

5

continuously and systematically in the State of Illinois and in this judicial district
for many years and continues to conduct that business actively today.

(Dckt. #2 at 2).

     In support of its motion to dismiss, however, BendTec submitted the affidavit of

its long-term (since 1994) Vice President/CFO Tom Conrad, (Dckt. #15-1), who states in

relevant part as follows:

- BendTec is incorporated in the State of Delaware and, prior to November 2021, maintained its principal place of business in Duluth, Minnesota where it engaged in the business of manufacturing heavy steel components used in power generation, pipeline transmission, offshore/sub-sea, complex structural steel and mining operations, (*Id.* ¶3);

- On November 15, 2021, BendTec sold its operating assets, ceased operations, changed its name to BT Operations, Inc, and continued to maintain its address in Duluth, Minnesota. Since selling its operating assets, BendTec has had no activity or contacts in or with the state of Illinois, (*Id.* ¶¶4-6);

- Both prior to selling its operating assets and after, BendTec did not: (1) maintain an office or any facilities in Illinois; (2) own any property in Illinois; (3) conduct operations in Illinois; (4) employ any employees in Illinois; (5) advertise or engage in any direct marketing into Illinois; or (5) maintain dealers or distributors located in Illinois, (*Id.* ¶¶7-8);

- Prior to the 2021 asset sale, BendTec: (1) maintained a non-interactive website that was available to customers wherever they were located; (2) was not registered to do business in Illinois; and (3) did not have a designated agent for service of process in Illinois, (*Id.* ¶9);

- Prior to the 2021 asset sale, BendTec maintained contracts with independent sales representatives who identified potential projects that BendTec may be interested in. One such representative covered several states, including Illinois, (*Id.*);

- For the eight-year period prior to the 2021 asset sale (for which BendTec maintains records), BendTec contracted five times with Illinois companies to deliver its goods (manufactured in Minnesota) to Illinois for a total of $92,678 in sales ($48,833 in 2014; $7,614 in 2015; $0 in 2016; $0 in 2017; $0 in 2018; $36,231 in 2019; $0 in 2020; and $0 in 2021). Those sales constituted 0.04% of BendTec's total sales over that eight-year period, (*Id.* ¶10); and

- Over that same eight-year period, BendTec contracted with companies located outside of Illinois for production of its products in Minnesota to be delivered to projects in Illinois, (*Id.*).

In response to the motion, Naturella failed to submit any properly authenticated evidence outside the pleadings – or its own speculation – to refute BendTec's affidavit regarding its contacts with Illinois.[2]  Having failed to do so, Naturella has fallen short of making the requisite *prima facie* showing that this Court has specific personal jurisdiction over BendTec.

To be sure, the evidence before the Court, which, again, remains unrefuted by plaintiff, establishes that BendTec – a *Delaware* incorporation with a principal place of business in *Minnesota* – has had *no* contacts with Illinois since 2021, let alone the "constant and pervasive" contacts necessary to meet the demanding standard to establish general personal jurisdiction. *Kipp*, 783 F.3d at 697-98.  Indeed, at the "critical" time BendTec was made a party to this suit upon its execution of a waiver of service on April 3, 2024, (Dckt. #6), it had no contacts with Illinois, nor had it had any such contacts for almost two and a half years prior to its execution of the waiver.  *See Prima Tek II, L.L.C. v. Klerk's Flexible Packaging, BV*, No. 05-238-DRH, 2006 WL 8455836, at *7 (S.D.Ill. Jan. 4, 2006), *aff'd*, 202 Fed.Appx. 461 (Fed. Cir. 2006) ("Because [defendant] has not had any systematic and continuous contacts with Illinois for three years prior to being served by Plaintiff in this suit, the Court does not find it appropriate to now subject [defendant] to the general jurisdiction of Illinois.").

---

[2] Instead, Naturella submitted unauthenticated (and some undated) web print outs and social media posts from the "public record" that it maintains show that BendTec worked on large projects in Illinois since 1999, including serving as the pylon fabricator for the North Avenue Bridge, the steel bending specialist for the 41st Street Pedestrian Arch Bridge, and the fabricator and bender for the 43rd Street Bridge. (Dckt. #20 at 3-4; Dckt. #20-1 - #20-6).  Naturella did not, however, accompany its submission with affidavits that provided any foundation or authentication of the documents, nor do those documents plainly refute the sworn statements of Conrad.

As for BendTec's contacts with Illinois prior to 2021, those too fall short of affording this Court general jurisdiction over BendTec. Indeed, as described above, the extent of BendTec's contacts with Illinois prior to 2021 consisted of maintaining a website available to customers everywhere (including in Illinois); maintaining a relationship with sales representatives who covered several states, including Illinois; selling a miniscule amount of its goods (only 0.04% of its sales during the relevant time frame) to Illinois companies; and selling its good to companies *outside* of Illinois for use in Illinois projects.

Such contacts are wholly insufficient to consider BendTec – an out-of-state company – "at home" in Illinois for "essentially all purposes." *uBID*, 623 F.3d at 426; *see also Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (operating a public website accessible to Illinois residents is not sufficient, by itself, to support general jurisdiction); *Tagliere v. Horseshoe Hammond, LLC*, No. 22 C 6176, 2023 WL 3886135, at *3 (N.D.Ill. June 8, 2023) (no general personal jurisdiction where "the record does not show that Illinois residents make up a meaningful percentage of the [defendant's] business—let alone that [defendant's] solicitation efforts in Illinois contribute to that business."); *Nicholson v. E-Telequote Ins., Inc.*, No. 14-CV-4269, 2015 WL 5950659, at *4 (N.D.Ill. Oct. 13, 2015) (holding that doing even "10 percent of your business in Illinois does not make a corporation 'at home,'" because otherwise corporations would have "homes" in numerous states); *Dimitrov v. Nissan N. Am., Inc.*, No. 15 C 06332, 2015 WL 9304490, at *4 (N.D.Ill. Dec. 22, 2015) (noting that even "the existence of a regional office, the operation of two additional facilities, and [Daimler's indirect subsidiary's] extensive sales in the state were not sufficient to confer general jurisdiction.").[3]

---

[3] Even if it were appropriate for the Court to consider the unauthenticated documents submitted by Naturella, the admittedly significant work on the bridge projects also appears to have occurred years before the 2024 filing date of this lawsuit.

For these reasons, Naturella has not met the "demanding" standard necessary to establish general personal jurisdiction.

### 2.    The Court does not have specific personal jurisdiction over BendTec.

In contrast to general jurisdiction, "[s]pecific jurisdiction is 'case-linked.'" *Pit Viper, LLC v. Xi'an Jiaye Tengda Trading Co.*, No. 23 C 14761, 2024 WL 5039888, at *3 (N.D.Ill. Dec. 9, 2024), *quoting Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017).  That is, "the suit must arise out of or relate to the defendant's contacts with the forum, meaning there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers*, 582 U.S. at 262 (cleaned up).

To determine if the Court may exercise specific personal jurisdiction over BendTec then, the Court must consider whether BendTec has purposefully directed its activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and whether Naturella's alleged injury arises out of BendTec's forum-related activities.  *Tamburo*, 601 F.3d 69 at 702.  To do so in cases arising out of contracts (such as this one), courts look to several factors "including (1) whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois; (2) whether payment was to be made in Illinois; (3) whether the defendant was ever physically present in Illinois in connection with the contract; (4) whether the Illinois plaintiff or the out of state defendant initiated the transaction; (5) and the occurrence of telephone calls or other communications to and from Illinois." *MG Design*, 267 F.Supp.3d at 1016.

Here, Naturella has not even attempted to argue in its response that the Court has specific jurisdiction over BendTec, nor could it.  Again, Naturella's claims for declaratory judgment arise

out of the initial manufacturing contract between TPE and BendTec and the subsequent assignment of receivables by Sotev to Naturella. As BendTec properly notes, the record before the Court reveals that the initial contract was: (1) for the purchase of BendTec's Minnesota piping (to ultimately be used in a power plant in India); (2) was negotiated between BendTec and TPE in Minnesota and Moscow; (3) was signed in Moscow; (4) TPE transferred funds through JP Morgan in Moscow to BendTec in Minnesota; and (5) BendTec was never physically present in Illinois in connection with the initial contract. (Dckt. #15-1 ¶¶12-13).

As for the assignment of receivables, that was made by Sotev (a Bulgarian national) to Naturella (admittedly an Illinois company), with *no* involvement of BendTec, whether in Illinois or elsewhere for that matter. *See North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023) ("[T]he question of personal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state."); *see also Purdue Rsch.*, 338 F.3d at 780 ("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity.").

Based on these unrefuted facts, the Court finds that BendTec did not purposefully direct its activities towards Illinois and, further, that Naturella's alleged injury did not arise out of BendTec's forum-related activities. Consequently, this Court thus lacks specific jurisdiction. *See, e.g., Tamburo*, 601 F.3d 69 at 702.

### 3. Plaintiff's request for jurisdictional discovery is denied.

In its response, plaintiff argues – with minimal supporting authority – that jurisdictional discovery is required here to resolve what it views as factual disputes regarding BendTec's contacts with Illinois. However, a "plaintiff must establish a colorable showing of personal jurisdiction before a court permits jurisdictional discovery" and a showing "based on conjecture"

is insufficient to make such a showing. *Viahart LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 19 CV 8181, 2022 WL 1004412, at *3 (N.D.Ill. Apr. 4, 2022); *see also Medline Indus., Inc. v. Diversey, Inc.*, No. 20 C 4424, 2020 WL 5763637, at *4 (N.D.Ill. Sept. 28, 2020) ("Generally, courts grant jurisdictional discovery if the factual record is ambiguous or unclear on the issue . . . but when a lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted."). As outlined above, plaintiff has failed to establish a colorable showing of personal jurisdictional; to the contrary, the *lack* of personal jurisdiction is crystal clear. Accordingly, plaintiff's request for jurisdictional discovery is denied.

### B. Naturella's Request to Transfer Pursuant to 28 U.S.C. §1631 is Granted.

Finally, Naturella requests that this Court transfer this case to the District of Minnesota, where BendTec maintained its principal place of business, if the Court finds that it lacks personal jurisdiction over defendant. Under 28 U.S.C. §1631, when a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other [ ] court . . . in which the action or appeal could have been brought at the time it was filed or noticed." *North*, 72 F.4th at 226. "Since the term interests of justice is vague, district courts have a good deal of discretion in deciding whether to transfer a case." *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999).

Here, the Court finds in its discretion that the interests of justice favor a transfer of this case to the District of Minnesota. To begin, BendTec does not dispute that the District of Minnesota would have personal jurisdiction over it. Moreover, this case has been pending for nearly a year, and the parties are in the midst of fact discovery, having already exchanged Rule 26(a)(1) disclosures and initial rounds of discovery, engaged in extensive Local Rule 37.2

conferences, and discussed certain amendments to the complaint to resolve those disputes. (*See* Dckt. #30). The interests of justice are thus served by transferring this matter (in lieu of a dismissal without prejudice) to allow the parties to complete discovery and resolve this matter in the District of Minnesota.[4] *See, e.g., Rieke Corp. v. Am. Flange & Mfg. Co.*, No. 1:06-CV-275 AS, 2007 WL 1724897, at *9 (N.D.Ind. June 12, 2007) (finding that transferring the case, which had already been "both lengthy and costly," would, among other reasons, "work no perceivable hardship" on the defendant).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted. The Clerk is directed to transfer this matter forthwith to the United States District Court for the District of Minnesota.

**Date: January 10, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**

---

[4] BendTec argues that Naturella has failed to show that a transfer is in the interest of justice because the manufacturing contract requires that any disputes arising therefrom must be resolved by the substantive laws of Sweden and settled by arbitration in Stockholm, Sweden. (Dckt. #25 at 7). However, BendTec has not moved to compel arbitration, and neither party has fully addressed the issue. As such, any disputes related to arbitration are best left for resolution by the District of Minnesota.